(No. 4283— 

BARNEY ROBERTSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 11, 1952.*

HICKMAN AND HICKMAN; AND, PFEIFER, FIXMER AND GASAWAY, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

Delaney, J.

The claimant, Barney Robertson, was employed by the State of Illinois, Department of Public Welfare, at the St. Charles School for Boys intermittently from 1937 until May 11, 1949. On the latter date, he was injured while performing his duties as a Cottage Parent II.

Shortly after 3:00 P.M. on May 11, 1949, claimant was getting onto a farm wagon, when the team pulling the wagon ran away, and he was thrown over a woven wire fence into a field, and rendered unconscious. He was removed to the hospital where it was found that he had fractures of the second, third, fourth, fifth and sixth ribs, and also a fracture of the right clavicle. The claimant alleges that he is totally and permanently disabled due to the accident.

The record in this case consists of the complaint, Departmental Report, transcript of evidence, abstract of evidence, statement, brief and argument of claimant, motion of respondent for an extension of time in which to file its brief, statement, brief and argument of respondent, motion of claimant for leave to reopen proofs for purpose of introducing additional testimony, motion of claimant for an extension of time in which to file reply brief, petition of claimant for rehearing, additional transcript of evidence, and the oral arguments of counsel for the parties hereto.

No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act, and the accident in question arose out of and in the course of the employment.

Dr. Richard M. Johnson, in his testimony, was asked, "Would it be true, Doctor Johnson, that part or some portion of his physical condition would be due

to the accident of which you have had a history?" Dr. Johnson answered this question as follows, "I would say a part of it is due to the accident, and part of it is not."

Dr. James T. Donosky testified that he had examined claimant on December 27, 1952, and found him suffering from a condition known as "Freidmann's post concussion syndrome, a permanent condition caused by the brain concussion he received as a result of the accident." Dr. Donosky testified that "post concussion syndrome is not an organic disturbance. In other words, if we were to go and examine this man's brain, we would find nothing wrong with it, but, functionally, there is something wrong." The symptoms of post concussion syndrome are headaches, dizziness, getting tired easily, and emotional instability. Claimant has all of these symptoms. Dr. Donosky also found that claimant did not have a perfect union when his fractured collar bone was repaired, and that the present fibrous union causes pain with the raising of the arm and shoulder. Claimant was also said to have a pulsating mass in the right side of the neck, just above the right sterno travicular joint, at the time of Dr. Donosky's examination. Further testifying, Dr. Donosky stated that claimant is now unable to earn a living for himself by manual labor.

Claimant testified he was unable to work on his 20 acre farm, or engage in any other kind of gainful employment since his injury.

From the additional medical testimony, we are of the opinion that claimant is permanently disabled, and has not been able, and is not able to do work of any kind.

We conclude, therefore, after a careful considera-

tion of the record, that the claimant is entitled to an award for permanent total disability.

Claimant was 63 years of age, and had no children dependent upon him for support. He returned to work for respondent on August 3, 1948, and worked until he was injured. At the time of his accident he received $175.00 per month, and employees in the same classification earn more than $1,560.00 per year. His compensation rate would, therefore, be the maximum of $15.00. Since the injury occurred subsequent to July 1, 1947, this must be increased 30%, making a compensation rate of $19.50 per week.

All medical, hospital, and other expenses have been paid by the respondent.

The claimant is, therefore, entitled to an award of $5,200.00 less the sum of $572.16, which sum was paid to claimant for temporary total disability, or a total award of $4,627.84, payable as follows:

$3,136.68, which has accrued from May 12, 1949 to June 11, 1952, from which must be deducted the sum of $572.16, making a sum of $2,564.52, which is payable forthwith;

$2,063.32, to be paid in weekly installments of $19.50 per week, beginning June 18, 1952, for a period of 105 weeks with a final payment of $15.82; thereafter a pension for life in the sum of $416.00 annually, payable in monthly installments of $34.66.

Rose Ferando was employed to take and transcribe the evidence at the hearings before Commissioner Summers. Charges in the amounts of $35.50, $50.00 and $26.75 were incurred for these services, which charges are fair, reasonable and customary. An award is, therefore, entered in favor of Rose Ferando in the amount of $112.25, which is payable forthwith.

This award is subject to the approval of the Governor, as provided by Section 3 of "An Act concerning the payment of compensation awards to State employees".